*Decision will be entered under Rule 50.*

E. T. WEIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.*

Docket No. 106058. Promulgated November 10, 1942.

*John E. Laughlin, Jr., Esq.*, for the petitioner.
*Orris Bennett, Esq.*, for the respondent.

OPINION.

DISNEY: This proceeding involves income taxes for the years 1934, 1935, 1936, and 1937, as to which the respondent determined deficiencies in the respective amounts of $57,727.55, $11,321.03, $20,936.45, and $19,953.66. One issue as to automobile expense and depreciation has been settled by stipulation, reducing the amounts now involved to some extent, as will be reflected in decision under Rule 50. The petitioner is a resident of Pennsylvania and his income tax returns for the periods here involved were filed with the collector for the twenty-third collection district of Pennsylvania. The facts have all been stipulated and we adopt the stipulation of facts as our findings herein. The facts will be set forth herein only in so far as necessary to an examination of the issues involved. They may be summarized as follows:

*Prior to October 22, 1942, this report was approved for promulgation.

In 1924 the petitioner placed in trust with a trust company 2,500 shares of the capital stock of the Weirton Steel Co. under a trust agreement providing in substance that the income was to be paid by the trust company to his then wife for her life in approximately equal monthly installments to the extent only of $18,000 per year; that if the income should exceed that amount, it should be held until $50,000 was accumulated, which amount should be treated as reserve fund and used to make up any deficiency thereafter occurring in any year in the income, and if not so used, should be invested and become a part of the principal fund; but that, if the trust income in any year should not equal $18,000, the petitioner would pay to the wife directly at the end of each year any amount necessary, in addition to the trust income, to make the sum of $18,000; that the stock dividends received by the trustee should be treated as corpus and not as income; that the stock placed in trust should not be sold or converted into cash or other securities or property without the consent of the petitioner, his wife, and the trustee; that as long as the petitioner was an officer or director of the Weirton Steel Co., the stock of that company held by the trustee should be voted at stockholders' meetings by the petitioner, if the trustee should be satisfied that to do so would not impair the security of the wife under the trust agreement; that in case of the failure of the income from the trust property to equal $18,000 in any year and the failure of the petitioner to make up the deficiency, the trustee was directed and authorized to use trust corpus for that purpose, the petitioner however forthwith to restore the same to the principal; that at any time while the shares of stock placed in trust remained in possession of the trustee, petitioner should have the right to substitute other security therefor of a value not less than the securities previously held and in all respects satisfactory to the wife and the trustee, the securities so substituted to be held by the trustee, subject to the terms of the trust agreement; that petitioner might at any time relieve himself of the personal obligation to make up any deficiency in the income of $18,000 per year by transferring to the trustee in substitution for the securities held, United States bonds, the income on which should be at least $18,000 per year, or other property equal as, a security, to such bonds, and satisfactory to the wife and to the trustee, and thereupon the securities previously held should be transferred to the petitioner and he be relieved of all personal obligation; that upon the death of the wife, the trust should cease and the trust corpus be conveyed to the three children of the petitioner and his wife, or to the survivor or survivors of such children; that in consideration of the creation of the trust, the wife released petitioner from all claims for dower or other interest in his property or estate and the petitioner released the wife from all claims on his part to curtesy or other claim to her property or estate.

The husband and wife were at the time of the trust agreement residents of Pennsylvania, and two days after the execution of the trust agreement the wife filed a libel for divorce in a court in Pennsylvania. Upon December 23, 1924, the court entered a decree granting her an absolute divorce, without any provision for property settlement, support and maintenance, or alimony.

At the time of the execution of the trust agreement the petitioner was president and a director of the Weirton Steel Co., and he continued to hold those offices until 1929, at which time the National Steel Corporation was organized, in connection with which organization all the shareholders of the Weirton Steel Co., including the trustee, exchanged their stock in the Weirton Steel Co. for stock in the National Steel Corporation, which, as a part of the reorganization, acquired all of the stock of the Weirton Steel Co. and of three other corporations. Thereafter and during the taxable years petitioner was a director and chairman of the board of directors of the National Steel Corporation.

The net income of the trust estate for the taxable years was as follows:

|  | Dividends | Interest | Nontaxable income | Capital gains |
|---|---|---|---|---|
| 1934 | $8, 160. 83 | $6, 030. 52 | $804. 60 | $78, 996. 11 |
| 1935 | 13, 694. 16 | 5, 017. 62 | 2, 569. 50 | 2, 996. 71 |
| 1936 | 21, 746. 18 | 3, 085. 48 | 2, 625. 54 | 364. 05 |
| 1937 | 23, 169. 72 | 2, 668. 22 | 2, 755. 84 | 65. 33 |

On December 31, 1933, the trustee held undistributed ordinary income of $114.67. During the taxable years it paid petitioner's former wife as follows:

| | |
|---|---|
| 1934 | $14, 400 |
| 1935 | 21, 300 |
| 1936 | 18, 000 |
| 1937 | 21, 600 |

The petitioner supplied $3,115.08 of the $14,400 paid to his former wife in 1934, but did not supply any part of the amounts paid to her in the other taxable years. The trustee at no time paid the former wife more than the accumulated ordinary income, plus the $3,115.08 above referred to.

The parties and the trust agreement involved herein are the same as in the case of *E. T. Weir*, 39 B. T. A. 400; affirmed on the point of taxability of trust income, 109 Fed. (2d) 996. Certiorari has been denied and the Board's decision therein has become final.

On December 29, 1937, petitioner's former wife executed and delivered to the petitioner an instrument releasing him forever from any and all obligation or liability to pay her any deficiencies of income from the said trust estate.

Four questions are presented for our solution: The extent to which a former decision of the Board of Tax Appeals and of the Circuit Court of Appeals for the Third Circuit is *res adjudicata* in this proceeding; whether the petitioner is taxable with respect to the trust income in excess of $18,000 per year; whether he is taxable with respect to the capital gains of the trust; and whether the release executed by his wife on December 29, 1937, releasing him from his guarantee of the $18,000 per year, causes the petitioner not to be taxable upon trust income for that year.

The petitioner concedes that under the opinion in *E. T. Weir*, 39 B. T. A. 400, affirmed as set forth above, he is taxable with the ordinary trust income to the extent of $18,000 per year, since that opinion, involving the years 1932 and 1933, to that extent renders that question *res adjudicata* herein. The respondent contends, however, that there is *res adjudicata* above $18,000 per year, that argument being based upon the expression in the former opinion that the promise (to guaranty $18,000 per year) "affords * * * a valid ground for taxing the income of the instant trust to the petitioner." From this respondent says that the taxability is limited only by the "income of the trust" even above the $18,000 guaranteed. We do not agree. *Res adjudicata* extends only to a cause of action common to the case at hand and the former case relied upon and to matters and facts in issue and directly adjudicated or necessarily involved in the former case. In the former *Weir* case the income was less than $18,000 per year; therefore there was, and could be, no issue as to income above that amount. Moreover, it is very clear from the decisions upon this subject that the sole reason for taxing trust income to the trustor is his personal agreement, in those jurisdictions where, as in Pennsylvania, and therefore in this matter, an absolute divorce ends all of the husband's obligations to support the wife. The "promise affords the sole * * * ground for taxing the income of the instant trust to the petitioner"—*Weir* v. *Commissioner*, 109 Fed. (2d) 996. We decided this point in *Halbert P. Gillette*, 46 B. T. A. 573, where the liability under the guaranty by the husband-trustor was $3,000 per year and we said:

* * * The trust income which served to discharge petitioner's guarantee constituted income to the petitioner and he is taxable on such income. * * *

* * * He has received "income" to the extent that his liability has been discharged, but anything paid to the wife from the trust income above $3,000 was not paid in discharge of petitioner's obligation. Accordingly, petitioner is taxable upon not more than $3,000 of the trust income in the year 1936.

We there relied on *Helvering* v. *Leonard*, 310 U. S. 80, which lays down the above principle. We hold that *res adjudicata* requires no taxation of petitioner on income above $18,000 per year.

It is also apparent from the language quoted above that unless the *Gillette* case, *supra*, is distinguishable, petitioner is not taxable upon either ordinary income or capital gains above $18,000.

The respondent urges, however, that in this case the income in excess of $18,000 went, under the provisions of the trust agreement, into a reserve to pay to the former wife any future deficiencies below the annual amount of $18,000, and that therefore there is discharge of "continuing obligation," and resultant taxability. The language relied upon by the respondent provides only that any excess above $18,000 income in any year "shall be held until the sum of fifty thousand dollars ($50,000.00) is accumulated, which amount shall be treated as a reserve fund and shall be used to make up any deficiency *thereafter*" occurring in any year in said income. (Italics supplied.) We think the point not well taken, for the reason that the petitioner had in any one taxable year an obligation of no more than $18,000. If the trust income was sufficient to discharge it, he had none left. The trust income of the year is charged to the trustor for the reason that it merely takes the place of his own income which otherwise would be required, and he is thus saved an equal part of his own income. But his income of a given year is not obligated because of a possible and contingent call upon that of some future year, and he is therefore not benefited in any taxable year prior to that in which the reserve fund is actually usable instead of his own income, to pay the former wife. Such a contingency is, we think, no ground for taxing the trustor above the guaranteed amount for the years at hand, upon either ordinary income or taxable gains.

The respondent contends for taxation of income above $18,000 also upon the ground that the petitioner had such dominion and control over the trust and such economic benefit therefrom as to require taxation to him of its income under *Helvering* v. *Clifford*, 309 U. S. 331, and the line of decisions to the same general effect. We examine the facts relied upon to demonstrate such control and economic benefit. The alleged powers are, in the main, that the petitioner retained power to direct the voting of the stock placed in trust, to veto sale of the stock or conversion into other securities, to reacquire the stock, and to appropriate to his own use unrealized appreciation of the corpus and realized capital gain by means of substituting for the corpus Government bonds sufficient to provide $18,000 annual income; also to reacquire the stock placed in trust by substituting other securities of equal value.

In our opinion, the right to direct the voting of the shares of stock, to veto their sale or conversion, or to substitute other securities therefor, had expired prior to the taxable years and therefore lends no support to the respondent's view, for the reason that such rights

are specifically limited to the stock originally placed in trust, i. e., stock in the Weirton Steel Co., and that stock had been disposed of prior to the taxable years. Moreover, the trust instrument provides for power in the petitioner, as long as he is an officer and director of the Weirton Steel Co., to direct the voting of the stock. He continued to be such officer or director only until 1929, when the Weirton Steel Co. stock was exchanged for stock in the National Steel Corporation and he became chairman of its board of directors. Again, the power to vote the stock is only "if the Trustee shall be satisfied that to do so would not impair in any way the security of the party of the second part" (the wife). Obviously, a power to vote the stock, so limited by the power of the trustee, does not confer the dominion alleged by the respondent.

Similarly, the reacquisition of the stock by substitution of other securities is limited: "If at any time hereafter while the shares of stock hereby assigned remain in the possession of the Trustee," the petitioner might substitute other securities. The Weirton Steel Co. stock "hereby assigned," in the taxable years no longer remained in the possession of the trustee. We think it clear that it was intended to limit this power to the original stock placed in trust, and that the petitioner could have been prevented from so substituting new securities for those of the National Steel Corporation, held by the trustee in the taxable years. Moreover, the substitution must be "in all respects satisfactory to the party of the second part [the wife] and the Trustee." Such discretion on the part of the trustee and the wife, a party with an adverse interest, even though perhaps not absolute, is inconsistent with the dominion and control alleged by the respondent.

The alleged power to veto sale or conversion of the securities is also limited to "stock hereby transferred" and it is doubtful whether it applies to the stock held in the taxable years. It arises from a provision that such stock shall not be sold or converted "without the consent in writing of the parties hereto," so that it is apparent that, though there is to some extent a power in that regard in the petitioner, there was also a limitation upon the power of the petitioner to substitute other securities. Limited to the consent of "the parties hereto," it falls far short of broad power and dominion such as relied on by the respondent.

With respect to the power to substitute United States bonds bearing income of $18,000 per annum, there seems no such limitation; and this, the respondent says, conferred absolute power to appropriate to his own use unrealized appreciation of the corpus, as well as realized capital gains, in effect making the trust revocable as to all assets in excess of the substituted bonds, and enabling the petitioner to re-

capture capital gains and gain control of the trust corpus to the extent of the excess over the value of the United States bonds substituted, even though such trust corpus had become of far greater value. We think, however, that such a right did not amount to revocation of the trust. In *Carlton H. Palmer*, 40 B. T. A. 1002; affd., 115 Fed. (2d) 368, we held that a trustor's retention of power to reacquire the trust *res* by purchase at a fair price to be fixed by a specified formula prescribed in the trust instrument and over which he had no control after the execution of the instrument "did not constitute a reservation by him of a power of revocation in whole or in part. Cf. *Shanley* v. *Bowers*, 81 Fed. (2d) 13," and "would have no effect upon the continued existence of the trust, but would result merely in a change in character of the trust corpus * * *." We think that language applicable here. We do not consider the substitution of trust corpus, under the restrictions placed, as in effect power to revoke.

Nor do we consider that there appears here the complexion as to intimate family relationship or temporary reallocation of family income which colors and in effect controls *Helvering* v. *Clifford, supra*, and cases of like import; indeed, the family here was breaking up, hostile interests appear, and, instead of temporary change, there is permanent provision for the wife. The trust was irrevocable, with no reversion either to petitioner or his estate, distinguishing the *Clifford* case. *Irving T. Bush*, 45 B. T. A. 609 (622). Under all of the circumstances and trust powers discussed above, we conclude that the petitioner is not taxable under section 22 (a), 166, or 167 of the Revenue Acts of 1934 and 1936, either upon ordinary income or capital gains, above $18,000 per year.

We next consider whether the release of petitioner's personal guaranty on December 29, 1937, relieved him from taxation on the trust income for that year. The record does not indicate as to whether the trust income was received or paid to the former wife, before or after December 29, 1937. If the $18,000, or any part thereof, was income received by the trust after December 29, 1937, we consider that to that extent the petitioner would have no tax liability for 1937, since the only ground upon which liability is based, that is, the personal guaranty, upon that date ceased to exist. The petitioner, however, has not shown that the trust income was received after the release and, the burden being upon him to overcome the effect of the determination by the respondent that petitioner is taxable upon the income for that year, we can not base any conclusion upon any receipt of trust income after that date, but assume, the contrary not being shown, that it was received prior to the release.

The question then arises as to whether the petitioner received such benefit as to cause taxation to him of the amounts of trust income

received. The petitioner argues that there was no obligation until the end of the year and that prior to that date such obligation had been wiped out by the release. We think, however, that the release could not be effective upon payments already made. In other words, the former wife did not release an obligation that had already disappeared because already discharged under the terms of the trust agreement, by the trust income, and upon the date of the release the petitioner had no obligation remaining, except to the extent of the difference, if any, between $18,000 and the amounts of trust income received by the former wife. That obligation, and only that, was still extant and subject to release, and, inasmuch as the trust income had served to reduce in such manner the obligation which otherwise would have fallen upon the petitioner at the end of the year, logic impels the conclusion that he received the benefit of trust income to the extent thereof, and is, therefore, taxable thereon. It is as if trust income had been endorsed upon his promissory note due and payable on December 31, and he should not be heard to say that there was release by the former wife, on December 29, of the entire obligation for the year. The release recites that "in recent years, the income from the trust estate has been more than sufficient to provide the sum of Eighteen Thousand Dollars ($18,000.00) a year to the undersigned," and the trust instrument provides that the wife shall be paid the trust income "in approximately equal monthly installments." This indicates that the income of the trust had been used "to provide the sum of Eighteen Thousand Dollars ($18,000.00)" during 1937, prior to the execution of such release. Absent proof to the contrary, we hold that the respondent did not err in taxing the petitioner to the extent of $18,000 for the year 1937.

In 1934 the ordinary income was less than $18,000 and capital gains were approximately $79,000. Is petitioner for that year taxable upon the capital gains, above ordinary gains, but below $18,000? If the instrument provided for the distribution of capital gains to the wife, he obviously is so taxable, since he guaranteed distribution to her of $18,000 per year. The Commissioner in the deficiency notice particularly determined liability for capital gains. In 1934 the wife received only $14,400, and income other than capital gains exceeded that amount, so that all income actually received by her is taxable to the husband without reference to taxable gains. The query remains, however, whether, above the amount received by her, and above the amount of ordinary interest and dividend income, and up to the $18,000 receivable, the petitioner may properly be taxed with capital gains. (The question occurs only as to 1934.) Res adjudicata from the former Weir case does not assist, since neither the question nor the facts are found therein and it was not necessarily there involved.

The trust instrument is somewhat indefinite as to whether income shall include capital gains as such, but examination of the instrument reveals, in our opinion, plain intent that they are subjected to the payment of the petitioner's obligation, for it is provided in section 10 that, if the petitioner fails to make up the deficiency, "a part of the principal of the trust funds may be used for the purpose, and the Trustee is hereby directed and authorized to so use the same; but, if so used, the party of the first part [the petitioner] shall, and he hereby agrees to forthwith, replace the same so that the whole of the principal shall be restored * * *." If, therefore, we assume that, as the petitioner contends, capital gains are corpus, nevertheless by the above language they are subjected to the discharge of the petitioner's liability for the deficiency. By the above language the petitioner has established a fund to take the place of his own income. There is in this regard no essential difference between ordinary income and capital gains, for both are liable for the discharge of the obligation, even assuming the capital gains to be so subjected only as they become principal. They are then immediately available for use to discharge the deficiency liability. To hold that merely because they become corpus, there is no taxability thereon to the petitioner, would, in the light of the above provision, be to deny the soundness of the essential and often stated reason for taxing the grantor on income of a trust to pay his obligations.

That the petitioner agreed to replace any corpus used to pay to the wife any deficiency below $18,000 is, in our opinion, immaterial. He might or might not comply with such agreement to restore principal, and we think that, since it is seen that his obligation to pay up to $18,000 per year is dischargeable by capital gains as principal, in the same manner as ordinary income, taxation to the husband because of the benefit and credit thus receivable upon his obligation should not be prevented by a mere ancillary agreement on his part to restore the principal used. To so hold would permit him to escape taxation by the mere expedient of violating his agreement to restore. He might be unable to comply with such agreement and no collateral or other security for such compliance is suggested by the trust agreement.

In *Reginald B. Parsons*, 44 B. T. A. 1142 (1154), we held the trustor taxable upon capital gains trust income, because the trustor had the power to dispose of the trust corpus; here he has already disposed of it, including capital gains, by subjecting all corpus to payment of his obligation to his former wife.

We therefore hold that, to the extent of the difference between ordinary income and $18,000 per annum, the income from capital gains is taxable to the petitioner.

*Decision will be entered under Rule 50.*